UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

MARK MCCOWN, )
)
Plaintiff, )
) **2:24-CV-63**
vs. )
)
NORFOLK SOUTHERN RAILWAY )
COMPANY., )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Defendant has filed a Motion to Exclude Plaintiff's Life Care Plan Opinion Witness Christopher Sellars, DO, CLCP and a supporting memorandum. [Docs. 52, 53]. Plaintiff filed a response in opposition [Doc. 89] along with exhibits in support [Doc. 90], to which Defendant filed a reply. [Doc. 94]. For the reasons stated below, Defendant's Motion [Doc. 52] is **DENIED**.

I.      **BACKGROUND**

On March 8, 2022, Plaintiff was working as a locomotive engineer for Defendant at the Bulls Gap, Tennessee Rail Yard. Plaintiff was standing on the ballast slope next to the track when the rock he was standing on gave way and Plaintiff fell onto his backside. Plaintiff immediately experienced pain upon his fall and he ultimately developed a condition called Complex Regional Pain Syndrome ("CRPS") due to the fall. Plaintiff filed this suit against Defendant pursuant to the Federal Employers' Liability Act ("FELA") asserting that his fall and subsequent injury was due, at least in part, to Defendant's negligence. While the parties do not dispute that a causal relationship exists between Plaintiff's fall and his CRPS diagnosis, they do dispute whether any negligent act or omission by Defendant contributed to Plaintiff's fall.

1

As part of this lawsuit, Plaintiff seeks compensation for the costs of future medical care and retained Christopher Sellars, DO, CLCP ("Dr. Sellars") "to create a life care plan that assesses his future care needs and the costs associated with that care." [Doc. 89, p. 1]. Defendant has moved to exclude Dr. Sellars as an expert, asserting that he is unqualified to render the opinions in his report, his methodology is unreliable, and his conclusions are not properly supported. In the alternative, Defendant requests that if Dr. Sellars is permitted to testify his testimony be limited to treatment that has been ordered by "Plaintiff's qualified treaters or recommended by qualified specialists" such as Defendant's own expert, Dr. Vera Graff. They further request that any testimony regarding costs associated with modalities of treatment Plaintiff has already declined or not sought or that Plaintiff would likely incur in the normal course of aging be excluded, along with any treatment for his comorbidities. [Doc. 94, p. 13-14].

## II.    APPLICABLE LEGAL STANDARD

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides general standards to assess reliability as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Put another way, there are essentially 3 requirements that must be met for expert testimony to be admissible: "(1) the expert be qualified by knowledge, skill, experience, training, or education; (2) the expert's testimony be relevant such that it will assist the trier of fact; and (3) the expert's testimony be reliable." *Endless River Techs., LLC v. TransUnion, LLC*, No. 23-3087, 2025 WL

2

233659, at *5 (6th Cir. Jan. 17, 2025) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)) (internal quotations omitted). The party offering the evidence bears the burden of showing it meets each of these requirements by a preponderance of evidence. *In re: Onglyza (Saxagliptin) and Kombiglyze (Saxagliptin and Metformin) Prod. Liab. Litig. v. Bristol-Myers Squibb Co,* 93 F.4th 339, 345 (6th Cir. 2024). While the party offering the evidence bears the burden of demonstrating reliability, the Sixth Circuit has made it clear that "'rejection of expert testimony is the exception rather than the rule.'" *U.S. ex rel. TVA v. An Easement and Right-of-Way over .98 Acres of Land,* No. 3:25-CV-00037-DCLC-DCP, 2025 WL 2449277, at *3 (E.D. Tenn. Aug. 25, 2025) (quoting *U.S. ex rel. TVA v. 1.72 Acres of Land in Tenn.,* 821 F.3d 742, 753 (6th Cir. 2016)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993). Ultimately, "[a] trial judge has broad discretion in the matter of the admission or exclusion of expert evidence." *United States v. Demjanjuk*, 367 F.3d 623, 633 (6th Cir. 2004) (quoting *United States v. Jones,* 107 F.3d 1147, 1151 (6th Cir.1997)).

## III.   ANALYSIS

### a.   Qualification

"To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702). Notably, the qualification requirement for expert witnesses "has always been treated liberally." *Id.* Defendant asserts that Dr. Sellars lacks the requisite qualifications "to form an opinion that will assist the trier of fact in understanding CRPS and lifelong projections." [Doc. 53, p. 10]. Specifically, Defendant argues that CRPS is a

neurological condition, and Dr. Sellars has no neurological specialty and no experience in neurology or the treatment of CRPS. *Id.* at 11, 14. Additionally, Defendant takes issue with the fact that Dr. Sellars chose not to consult with any specialists or with Plaintiff's treating physicians. *Id.* at 14.

Plaintiff responds by asserting that Defendant's arguments "ignore the scope and purpose of the field of physiatry." [Doc. 89, p. 6]. Plaintiff's points to Dr. Sellars's own deposition testimony, wherein he describes physiatry as "a blend of neurology, orthopaedics,..rehabilitation medicine, musculoskeletal care…pain conditions, concussions, traumatic brain injury…" *Id.* (citing Doc. 52-8, p. 3]. Plaintiff asserts that based on his training and practice experience, Dr. Sellars is qualified to independently diagnose and treat a wide range of conditions that cause long-term pain and functional impairment, including CRPS. *Id.* at p. 7. While acknowledging that CRPS treatment is not a focal point of Dr. Sellars' practice, Plaintiff contends that a witness does not need to be a leading authority in the field in question to meet the qualifications of an expert. *Id.* at 8.

"Without specialized training, a life-care planner is generally not qualified to opine about "whether a plaintiff will need certain medical treatments and/or services in the future." *Papineau v. Brake Supply Co., Inc.*, No. 4:18-CV-168, 2021 WL 4493707, at *10 (W.D. Ky. Sept. 30, 2021). "[T]he inclusion of future medical treatments and/or services in a life care plan must be supported by the opinion of a qualified medical expert." *Papineau v. Brake Supply Co., Inc.*, No. 4:18-CV-168, 2021 WL 4493707, at *10 (W.D. Ky. Sept. 30, 2021). At the same time, such medical support can come from sources other than the planner's own training and experience. In *Papineau*, the court permitted testimony regarding future medical care by a life care planner who was not a medical doctor because the planner relied upon the plaintiff's current care and information

supplied by plaintiff's doctors. *Papineau v. Brake Supply Co., Inc.*, No. 4:18-CV-168, 2021 WL 4493707, at *10 (W.D. Ky. Sept. 30, 2021).

Here, Dr. Sellars is both a doctor who is board-certified in Physical Medicine and Rehabilitation, also known as physiatry, and a Certified Life Care Planner. [Doc. 52-3]. Dr. Sellars has been practicing medicine since 2007 and is also a publisher and presenter in the areas of physiatry, sports medicine, and pain medicine. *Id.* Defendant does not dispute that Dr. Sellars is a qualified medical doctor in general but argues that his lack of specific experience with CRPS renders him unqualified to opine regarding Plaintiff's injury and future medical needs. [Doc. 53, p. 14]. The breadth of Dr. Sellars' medical practice and experience is rather wide, and although he does not specialize in neurology or CRPS he does have significant experience related to pain medicine and some experience with CRPS cases. [Doc. 52-3]. Additionally, Dr. Sellars conducted a fairly exhaustive review of Plaintiff's medical records and considered both Plaintiff's current treatment and recommendations for future treatment in forming his opinions. Given that CRPS is a chronic pain condition and that he relied upon the information in Plaintiff's medical records supplied by other medical experts, Dr. Sellars' practice and experience is sufficiently related to the diagnosis and treatment of injuries such as Plaintiff's to qualify him to render opinions and recommendations related to Plaintiff's long-term care. Any shortcoming in Dr. Sellars' experience directly with CRPS is fodder for cross-examination but does not warrant exclusion.[1]

---

[1] The Court acknowledges that Dr. Sellars did not consult with any of Plaintiff's treating physicians before forming his opinions regarding Plaintiff's future care. However, because Dr. Sellars is a qualified medical professional in his own right, his failure to consult with other medical professionals goes to the weight of his opinions, not the admissibility of them. *See Burris v. Ethicon,* 2021 WL 3190747 (N.D. Ohio, July 28, 2021) (rejecting arguments similar to those made in the case at hand and permitting the opinion testimony of a life care planner who is a certified rehabilitation counselor and licensed associate counselor, finding that any issues regarding the information he relied on and/or did not consider in addressing future medical care needs went to the weight rather than the admissibility of his testimony); *see also Roach v. Hughes,* 2015 WL 3970739 (W.D. KY, June 30, 2015) (permitting the life care opinion testimony offered by a registered nurse based upon her education, training and experience as both a nurse and life care planner along with her review of the plaintiff's medical records).

### b. Reliability

To be admissible, Rule 702 requires that expert testimony be reliable. Fed. R. Evid. 702. Generally, reliable testimony must be based upon "sufficient facts or data" and be the "product of reliable principles and methods" that were reliably applied to the facts of the case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). Additionally, *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) provided a non-exhaustive list of factors to consider in assessing reliability, including "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *United States v. Langan,* 263 F.3d 613, 621 (6th Cir.2001)). The court may also consider whether the expert opinions offered were prepared solely for litigation. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007). Still, the test for reliability is flexible, and may be tailored to the facts of each case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). At the same time, when testimony is prepared solely for litigation and does not flow naturally from the witness's own current or prior research or work, it is "well within a trial judge's discretion to apply the Daubert factors with greater rigor." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).

In attacking the reliability of Dr. Sellar's report, Defendant vehemently asserts that Dr. Sellars is not qualified to render opinions regarding Plaintiff's long-term care due to his lack of specialized knowledge of CRPS. As such, Defendant characterizes Dr. Sellars's testimony as pure speculation. [Doc. 53, p. 10-12]. Defendant also takes issue with the fact that Dr. Sellars did not consult with any medical specialists or Plaintiff's treating physicians before preparing his initial

report. Defendant also asserts that Dr. Sellars failed to consider Plaintiff's comorbidities or consult any relevant literature. *Id.* at 14. Defendant points to the fact that Dr. Sellars initially did not factor in Plaintiff's comorbidities into his life expectancy because he did not, at that time, think they would have an effect but later, after consulting with Plaintiff's primary care physician, adjusted Plaintiff's life expectancy downward by 12 years as evidence of how unreliable Dr. Sellars' testimony is. *Id.* at 15. Further, Defendant takes particular issue with Dr. Sellar's inclusion of a surgically implanted spine simulator in his calculation of Plaintiff's future treatment expenses. [Doc. 94, p. 9]. Defendant asserts that in addition to the increased risk of infection that Plaintiff, as a diabetic, would face if a spine stimulator were implanted, a spine stimulator has not been prescribed to Plaintiff and states that Plaintiff's decline of other pharmaceutical treatments indicates that he will not be amenable to a spine stimulator in the future. *Id.* Additionally, Defendant notes that Dr. Sellars did not "segregate and eliminate from the life care plans pre-existing/co-existing conditions that would require such care regardless of Plaintiff's alleged railroad injury." [Doc. 94, p. 13.][2] Finally, Defendant argues that Dr. Sellars failed to connect the dots between his opinions and the underlying data, and in turn, his opinions are supported by mere *ipse dixit* which is insufficient to permit the admission of a proposed expert's opinion. [Doc. 94, p. 21].

In response, Plaintiff contends that Dr. Sellars followed a widely accepted 3-stage methodology proscribed by the "Tenants, Methods, and Best Practices advocated by the American Academy of Physician Life Care Planners" in formulating his opinions. [Doc. 89, p. 9-11]. Plaintiff

---

[2] Defendant also spends considerable time contrasting Dr. Sellars' conclusions with those of Defendant's own experts, Dr. Veena Graff, M.D. and life care planner Susan Wirt. When multiple experts offer differing opinions, it is for the jury to determine which opinion is more credible, not the court. *See Spears v. Cooper,* No. 1:07-CV-58, 2008 WL 5552336, at *6 (E.D. Tenn. Nov. 17, 2008).

further advises that Dr. Sellars' process involved reviewing Plaintiff's medical records, interviewing and examining Plaintiff, and applying his education, training, and experience to the information he gathered. *Id.* at 11-12. Then, after determining the future medical care that Plaintiff would need, Dr. Sellars "sourced the costs in the plan for Plaintiff's geographic area" utilizing a widely used national database. *Id.* at 12. With respect to considering Plaintiff's comorbidities, Plaintiff asserts that Dr. Sellars believed Plaintiff's diabetes to be well-controlled when initially determining that it was unlikely to reduce his life expectancy. Then, after Plaintiff's treating physician, Dr. Richard Carter, gave deposition testimony stating that people with diabetes have a reduced life expectancy, Dr. Sellars consulted with Dr. Carter and updated his report to reduce the duration of the life care plan from 22 years to 10 years. *Id.* at 13. However, Plaintiff does not address Defendant's assertions that Dr. Sellars' life care plan includes treatment that is unrelated to Plaintiff's injury and subsequent CRPS.

Expert testimony that "amounts to mere guess or speculation" should be excluded. *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). When an opinion is based on assumed facts, support for those assumptions must exist in the record. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). "[W]here the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). At the same time, "[f]or an expert opinion to be admissible, the expert must connect the dots between the evidence on which he relies and the conclusion he ultimately reaches." *SNMP Rsch., Inc. v. Extreme Networks, Inc.*, No. 3:20-CV-451, 2025 WL 1868072, at *3 (E.D. Tenn. July 7, 2025). In other words, expert reports "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *SNMP Rsch., Inc. v. Extreme Networks, Inc.*, No. 3:20-CV-451, 2025 WL 1868072, at

8

*3 (E.D. Tenn. July 7, 2025) (quoting *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)). "However, mere 'weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than on its admissibility.'" *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *United States v. L.E. Cooke Co.,* 991 F.2d 336, 342 (6th Cir.1993)).

As an initial matter, the Court notes that while Defendant asserts Dr. Sellars' methodology is flawed, causing his opinions to be unreliable, much of Defendant's reliability argument rehashes what Defendant perceives are Dr. Sellars' insufficient qualifications. As the Court has already addressed Dr. Sellars' qualifications in the previous section, it will not do so again here. Additionally, the Court notes that Defendant does not provide any substantial criticism of Defendant's 3-part approach to arriving at his opinions. Instead, Defendant's primary criticism of Defendant's methodology is that he failed to consult specialists and Plaintiff's treating physicians. The Court concludes that these arguments go to weight, not admissibility.

In arguing that exclusion of Dr. Sellar's opinions is required, Defendant also points to two cases from the Southern District of Texas where his testimony was excluded. *See In re M/V AET Excellence*, No. 3:23-CV-00167, 2025 WL 3653552, at *2 (S.D. Tex. Dec. 17, 2025); *De Alfaro v. Panther II Transportation, Inc.*, No. CV H-22-2619, 2024 WL 2725047, at *6 (S.D. Tex. May 28, 2024). Defendant contends that Dr. Sellars' testimony was excluded in those cases because he "does not have the board certifications, experience, or knowledge to opine about future care." [Doc. 94, p. 6]. This is a misstatement of the courts' reasoning in those cases. In *In re M/V AET Excellence*, No. 3:23-CV-00167, 2025 WL 3653552, at *2 (S.D. Tex. Dec. 17, 2025), the court excluded Dr. Sellars' testimony because he "fail[ed] to explain how he reached his opinions as to Claimants' future medical needs," not because Dr. Sellars was not qualified to render such

opinions. Similarly, in *De Alfaro v. Panther II Transportation, Inc.*, No. CV H-22-2619, 2024 WL 2725047, at *6 (S.D. Tex. May 28, 2024), Dr. Sellars' testimony was excluded because he did not "adequately explain the basis for his recommendations for life-long therapy, testing, and medication." While Dr. Sellars' voluminous reports do not necessarily offer the clearest explanations for his conclusions, Defendant was able to question Dr. Sellars about the reasoning for his conclusions regarding future treatment during the doctor's deposition. *See* [Doc. 52-8, p. 18-26]. During that process, Dr. Sellars provided reasonably specific and rational answers. *Id.*

Were the Court viewing Dr. Sellars' report in a vacuum, it might conclude that Dr. Sellars did not adequately connect the dots between the data he considered and his conclusions. However, when viewed in conjunction with his deposition testimony, the Court is satisfied that Dr. Sellars has provided an adequate factual basis for his conclusions.

Having determined that Dr. Sellars' testimony is not unreliable as a whole, the Court now turns to Defendant's request that Dr. Sellars' testimony be limited. [Doc. 94, p. 13-14]. In considering Defendant's argument that Dr. Sellars did not "segregate and eliminate from the life care plans pre-existing/co-existing conditions that would require such care regardless of Plaintiff's alleged railroad injury," the Court is mindful that on its face Dr. Sellars' report does appear to include treatment recommendations unrelated to Plaintiff's CRPS. [Doc. 94, p. 13; Doc. 52-1]. However, when asked about this issue during his deposition, Dr. Sellars reiterated that all his conclusions were based on what he believes Plaintiff "needs pertaining to his injury in association with the other types of conditions that he has…" and explained that Plaintiff's injury can "exacerbate those things[,]" referring to his other conditions. [Doc. 52-8, p. 23]. As such, the Court is likewise satisfied that Dr. Sellars' has provided a basis for concluding that such treatments are related to Plaintiff's CRPS. With that said, Defendant may renew its objection at trial as to any

specific cost for which it believes that Dr. Sellars has not provided a proper foundation during his trial testimony.

In asking the Court to limit Dr. Sellars' testimony, Defendant essentially asks the Court to limit Dr. Sellars' admissible recommendations regarding Plaintiff's future care needs to those that Defendant's own experts have recommended. [Doc. 94-13]. This the Court cannot, and will not, do so. Both Plaintiff and Defendant have retained their own experts who have, unsurprisingly, reached different conclusions about Plaintiff's future needs based upon his CRPS. In such situations, so long as the opinions are reliably supported by a factual basis as they are here, "[i]t is for the jury to determine which expert's opinion is more credible and ultimately should be favored. *Spears v. Cooper*, No. 1:07-CV-58, 2008 WL 5552336, at *6 (E.D. Tenn. Nov. 17, 2008).

## IV. CONCLUSION

Based upon the foregoing, Defendant's Motion [Doc. 54] is **DENIED**. However, in making this ruling the Court is not in any way limiting Defendant's ability to engage in vigorous cross examination of Dr. Sellars at trial utilizing the issues that they have raised in seeking to exclude his opinion testimony.

SO ORDERED:

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

11